**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00505-REB-KLM

DIEBOLD ENTERPRISES SECURITY SYSTEMS, INC., a New York corporation,

    Plaintiff,

v.

LOW VOLTAGE WIRING, LTD, a Colorado corporation d/b/a LVW Electronics, Inc.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before is the **Defendant's Motion for Summary Judgment** [#21],[1] filed May 24, 2013. I grant the motion.[2]

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

[1] "[#21]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] Given my resolution of the summary judgment motion, **Defendant's Unopposed Motion To Withdraw Jury Demand** [#63], filed December 9, 2013, is moot, and will be denied on that basis.

(1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Id***. at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Id***.

### III. ANALYSIS

This is an action for breach of contract. Plaintiff, the subcontractor, contends that defendant still owes it $470,646.14 in Maryland state taxes. Because the terms of the

Master Subcontract clearly establish otherwise, I find and conclude that defendant is entitled to summary judgment.

Defendant contracted with the United States Army Engineering and Support Center, CEHNC-CT (the "government"), to procure and install an Electronic Security System for the Defenses Information Systems Agency in Fort George G. Meade, Maryland (the "Prime Contract").  Defendant in turn engaged plaintiff to perform a portion of the work necessary on the Prime Contract.  The original "cumulative total sum presently available for payment and allotted to" the Master Subcontract was $6,813,511.58 (**Mot. App.**, Exh. B § 8(a) at 6), which, by virtue of various approved change orders, was ultimately increased to $7,889,051.49 (**Complaint** ¶ 8 at 2 [#1], filed February 26, 2013).

Soon after completing work on the project, plaintiff submitted to defendant a Request for Equitable Adjustment ("REA") for additional costs and expenses related to its work.   After various revisions, defendant agreed to submit the REA to the government under the terms of a November 23, 2011, Pass-Through Agreement (the "PTA").  (*See* **Mot. App.**, Exh. D.)  The PTA provides, in relevant part,

> 5. Except for the instant REA and any outstanding invoices and as otherwise provided in this Agreement, Diebold releases, discharges and agrees to hold LVW harmless from any and all REAs, demands, charges or claims of any kind or nature whatsoever, from any and all damages, actions or causes of action, either in law or in equity, which it may now have, which are known or unknown by Diebold at the time of execution of this Agreement, that relate to the Project.
>
> 6. It is the purpose of this Agreement, except for the conditions set forth above, forever to settle, adjust, and discharge all REAs or claims of whatever kind or nature that

> Diebold may have accrued against LVW which relate to the Project. Upon resolution of Diebold's REA and final LVW payment of Diebold`s outstanding invoices, the release described in **Paragraph 5** shall thereupon become absolute and final as to all of Diebold's claims against LVW.

(*Id.*, Exh. D ¶¶ 5 & 6 at 2 (emphasis in original).) On January 11, 2012, the Contracting Officer for the government denied the REA.

On May 18, 2012, plaintiff submitted its final invoice, #082830, which is the subject of the instant action, to defendant. Therein, it sought $930,995.44 as the final installment due on the Master Subcontract, as well as $470,646.15 for Maryland state sales tax at the rate of 6 percent. (*Id.*, Exh. G at 6.) On May 21, 2012, plaintiff executed a Final Release of Claims (the "Final Release"), wherein it stated,

> Pursuant to the terms of Master Subcontract # 1521, for value received, and in order to induce payment of final invoice #082830, and in consideration of the total sum of the subcontract in the amount of $7,889,050.18 which has been received and paid for in accordance with the contracted Terms and Conditions under Master Subcontract # 1521 for the benefit of the Fort Meade DISA Project said Subcontractor, Diebold Enterprise Security Systems, Inc,, does remise, release, and discharge LVW Electronics, Inc., its officers, agents and employees, of and from all liabilities, obligations, claims, and demands whatsoever under or arising from the said Subcontract, including modifications.

(*Id.*, Exh. I.) Defendant paid the final installment of $930,995.44 by January 22, 2013, but refused to pay the amount requested for sales tax. This lawsuit followed.

Defendant premises its motion for summary judgment on the language of the releases contained in the PTA and the Final Release. These arguments are moot, however, if there is no right or claim founded in the contract to be released. Such is the case here.

Both releases in this case are made with explicit reference to the underlying Master Subcontract.  (**See id.**, Exhs. D ¶ 16 at 3 ("In the event of any inconsistency between this Agreement and the parties' Subcontract, the Subcontract shall take precedence.  It is the express intention of the parties that unless otherwise expressly provided in this Agreement, no term or provision of the Subcontract shall be changed by this Agreement/) & I (noting that Final Release is made "[p]ursuant to the terms of the Master Subcontract #1521").)  The Master Subcontract not only sets the full contract price (later increased in accordance with the terms thereof), but also provides further as follows:

> c.  [Plaintiff] agrees to perform work as specified within this Subcontract *up to the point at which the total amount paid and payable by [defendant] pursuant to the terms of the Subcontract equals, but does not exceed the total amount actually allotted to the Subcontract*.
>
> d.  No notice, communication or representation in any other form or from any person other than written notice from [defendant's] Contracts Administrator shall affect the amount allotted to the Subcontract.  In the absence of the specified written notice, *[defendant] shall not be obligated to reimburse [plaintiff] for any costs in excess of the total amount allotted to the Subcontract*, whether those excess costs were incurred during the course of the Subcontract or as a result of termination.  *Any costs incurred by [plaintiff] in excess of the amount allotted shall not be an allowable cost of the Subcontract* if the allotment is subsequently increased, unless the specified notice by [defendant's] Contracts Administrator specifically states that such costs are allowable.

(**Id.**, Exh. B §§ 8(c) & (d) at 6 (emphases added).)  This language plainly expresses the parties' intent regarding the total sum that plaintiff was to be paid on the contract.  **See Ad Two, Inc. v. City & County of Denver ex rel. Manager of Aviation** 9 P.3d 373,

5

376 (Colo. 2000).[3] There is no dispute but that plaintiff has been paid the full $7,889,051.49 defendant agreed to under the Master Subcontract and all properly requested increases. Plaintiff never submitted a proper request (as set forth in the Master Subcontract) for an increase in the price of the contract to account for sales taxes in any amount. It thus has no contractual basis for claiming any additional amounts as sales tax or otherwise.

My conclusion in this regard is buttressed by the Master Subcontract's specific incorporation by reference of various provisions of defendant's underlying contract with the government. (*See* **Mot. App.**, Exh. B § I, ¶ 52 at 16.) Most relevant for present purposes is a provision entitled "Federal, State And Local Taxes." (*See id*, Exh. B § I, ¶ 52 at 18.) Although misdesignated in the Master Subcontract as 48 C.F.R. § 52.229-6,[4] section 52.229-3 of that same chapter addresses this issue by that precise title and provides that, with exceptions not relevant here, "[t]he contract price includes all

---

[3] The Master Subcontract specifically provides that it is to be governed, to the extent possible, by "the law of US Government contracts as set forth by statute and applicable regulations and decisions by the appropriate courts and the Boards of Contract Appeals," and beyond that, by the laws of Colorado. (**Mot. App.**, Exh. B ¶ 45 at 15.) Nevertheless, the Supreme Court has made clear that "ordinary government contracts are typically governed by the rules applicable to contracts between private parties," ***United States v. Winstar Corp.***, 518 U.S. 839, 914, 116 S.Ct. 2432, 2474, 135 L.Ed.2d 964 (1996), and both parties rely on Colorado law in support of their respective positions.

[4] Section 52.229-6 is concerned with taxes applicable to supplies or services furnished outside the United States, and applies in lieu of any clause of the contract dealing with Federal, State, or local taxes. *See* 48 C.F.R. § 52.229-6. There is no allegation or evidence that any of the work relevant to the Master Subcontract was performed, or supplies therefor furnished, outside the United States.

Thus, and although plaintiff asks the court to insert the correct citation to section 52.229-3 under the auspices of the "Christian Doctrine" applicable to government contracts, *see* ***General Engineering & Machine Works v. O'Keefe***, 991 F.2d 775, 779 (Fed. Cir. 1993), the court need not go so far. Plainly, the reference to section 52.229-6 rather than 52.229-3 constitutes a simple matter of scrivener's error. *See* ***SpiritBank v. McCarty***, 2009 WL 3526652 at *4 (N.D. Okla. Oct. 23, 2009). The accompanying designation and context are sufficiently "clear, precise, [and] convincing" to demonstrate that the mistake does not reflect the parties' true intent. *See* ***Torre v. Federated Mutual Insurance Co.***, 1994 WL 541773 at *1 (D. Kan. Sept. 16, 1994) (citation and internal quotation marks omitted).

applicable Federal, State, and local taxes and duties." 48 C.F.R. § 52.229-3(b)(1). Moreover, although plaintiff claims it excluded applicable sales taxes from its Statement of Work, the contrary provision of the Master Subcontract takes precedence. (*See id.*, Exh. B § A at 2 (providing that plaintiff "shall not be bound by and specifically objects to any term or condition whatsoever which is different from or in addition to the provisions of this subcontract").

## ORDERS IV.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion for Summary Judgment** [#21], filed May 24, 2013, is **GRANTED**[5];

2. That **Defendant's Unopposed Motion To Withdraw Jury Demand** [#63], filed December 9, 2013, is **DENIED AS MOOT**;

3. That plaintiff's claims against defendant are **DISMISSED WITH PREJUDICE**;

4. That judgment with prejudice **SHALL ENTER** on behalf of defendant, Low Voltage Wiring, Ltd., a Colorado Corporation d/b/a LVW Electronics, Inc., against plaintiff, Diebold Enterprises Security Systems, Inc., a New York corporation, on all claims and causes of action;

5. The all pretrial deadlines, the Trial Preparation Conference set January 3, 2014, at 3:30 p.m., and the trial set to commence January 27, 2014, are **VACATED**;

---

[5] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

and

      6. That defendant is **AWARDED** its costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated December 10, 2013, at Denver, Colorado.

      **BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge